1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   VERSATERM INC.,                          CASE NO. C16-1217JLR

11                    Plaintiff,              ORDER GRANTING MOTION
                                              FOR A PRELIMINARY
12            v.                              INJUNCTION

13   CITY OF SEATTLE, et al.,

14                    Defendants.

## I.   INTRODUCTION

16        Before the court is Plaintiff Versaterm Inc.'s ("Versaterm") amended motion for a

17   preliminary injunction.  (Mot. (Dkt. # 15).)  Versaterm seeks to prevent Defendants City

18   of Seattle ("the City") and Seattle Police Department ("the SPD") (collectively,

19   "Defendants") from disclosing allegedly proprietary information and trade secrets

20   pursuant to Washington's Public Records Act ("the PRA"), RCW ch. 42.56, request from

21   nonparty Nolan Hicks.  (*See generally* Mot.; Compl. (Dkt. # 1).)  The court has

22   considered Versaterm's motion and the related filings, the City's response, Versaterm's

1   reply in support of its motion, Versaterm's supplemental briefing, the appropriate

2   portions of the record, the oral arguments of the parties,[1] and the relevant law.  Being

3   fully advised, the court GRANTS the motion and PRELIMINARILY ENJOINS the City

4   and the SPD from producing, disclosing, or releasing any of Versaterm's proprietary

5   materials in response to Mr. Hicks's PRA request as set forth below.

6                                   **II.    BACKGROUND**

7   **A.    Versaterm's Business and Software**

8          Versaterm is a computer software company based in Ontario, Canada that creates

9   "advanced information management systems for public safety agencies."  (Rosales Aff.

10  (Dkt. # 5) ¶¶ 2-3.)  Versaterm creates computer programs that "allow the SPD to operate

11  more efficiently . . . for better records management and for computer-aided dispatch

12  operations."  (Compl. ¶ 2.)  In addition to licensing these computer programs to its

13  customers, Versaterm also licenses computer manuals.  (*See* Rosales Aff. ¶ 7.)  The

14  manuals provide information about Versaterm's computer software, including "the

15  functionality, design, and specifications" of the software; "descriptions of the features

16  and functions" of the software; "step-by-step instructions on how to use the software";

17  and "screen shots of the software in operation."  (*Id.* ¶ 8.)  Specifically, Versaterm

18  contends that its "search criteria," "graphical interface," and "design architecture" are

19  trade secrets.  (Supp. Rosales Decl. (Dkt. # 30) ¶ 11-12.)

20  //

21  ───────────────

22          [1] The court heard oral argument from Versaterm and the City of Seattle on September 6, 2016.  (Min. Entry (Dkt. # 31).)

ORDER- 2

1    The computer programs and manuals are not available to the public, prospective

2    customers, or Versaterm's competitors.  (*Id.* ¶ 11.)  Versaterm provides them only to

3    customers with whom Versaterm has a confidentiality agreement.  (*Id.* ¶ 13; Supp.

4    Rosales Decl. ¶ 5.)  Customers must agree in writing "to maintain the confidentiality of

5    Versaterm's proprietary information," including its manuals.  (*Id.*)  In addition,

6    Versaterm requires the "[p]eople involved in the creation and design of any of the

7    software [to] sign confidentiality agreements . . . ."  (Supp. Rosales Decl. ¶ 3.)

8    Versaterm's manuals also state on their covers that they contain confidential information

9    and trade secrets.  (Rosales Aff. ¶ 12.)

10    According to Versaterm, releasing this information to the public would harm

11    Versaterm's ability to compete because its competitors "would be free to replicate

12    Versaterm's features, functions, methods, and designs, including screen designs and

13    graphical user interfaces."  (*Id.* ¶ 10.)  Versaterm also argues that disclosure would allow

14    its competitors to "skip years of development" by co-opting features of Versaterm's

15    products that are included in the manuals.  (Rosales Supp. Decl. ¶ 11.)  Versaterm further

16    contends that its competitors "could also use the information in their marketing strategies

17    to exploit any weaknesses they find."  (Rosales Aff. ¶ 10.)

18    Versaterm licenses four products to the SPD:  Computer Aided Dispatch ("CAD"),

19    Records Management System ("RMS"), and Mobile Workstation ("MWS"), which

20    includes Mobile Dispatch and Automatic Field Reporting ("AFR").  (Rosales Aff. ¶ 5.)

21    Each of these programs allegedly includes a detailed manual that describes its

22    functionality and design and provides software specifications.  (*Id.* ¶¶ 7-8.)  Defendants

1   signed licensing agreements with Versaterm in exchange for product licenses.  (Mot. at

2   3.)

3        Mr. Hicks, a reporter, issued a PRA request to the SPD on June 2, 2016. (Resp. at

4   2.)  He seeks "[m]anuals and other training documents relating to Versadex/Versaterm,

5   specifically any guides or instructions about how to query and export crime data from the

6   system."  (Friend Decl. (Dkt. # 17) Ex. A.)  Versaterm believes that "Mr. Hicks has been

7   trying to obtain copies of Versaterm's manuals from various other police departments

8   around the country."  (Rosales Aff. ¶ 6.)  Almost seven weeks after the SPD received Mr.

9   Hicks's request, the SPD notified Versaterm that it intended to provide Versaterm's

10  software manuals and other proprietary information to Mr. Hicks on August 5, 2016,

11  absent a court order enjoining it from doing so.  (*Id.* ¶ 19.)  Versaterm allegedly tried to

12  negotiate with the SPD the next day to prevent any disclosure, but the SPD "did not

13  substantively respond to Versaterm until July 27," when it gave Versaterm a copy of Mr.

14  Hicks's request for the first time.  (*Id.*)

15  **B.    This Lawsuit**

16       Versaterm filed suit against Defendants on August 3, 2016, seeking to

17  permanently enjoin the SPD from disclosing its proprietary information to Mr. Hicks.

18  (Compl.)  Versaterm did not name Mr. Hicks as a defendant.  (*See generally* Compl.)

19  The next day, Versaterm filed a motion for a temporary restraining order ("TRO").  (TRO

20  (Dkt. # 4).)  The court granted the motion on August 4, 2016, finding that Versaterm met

21  the standards for issuing a TRO and that the court could not reasonably wait to obtain a

22  response from Mr. Hicks or Defendants before the SPD planned to disclose Versaterm's

1  information.  (8/4/16 Ord. (Dkt. # 8).)  The court extended the TRO on August 18, 2016,

2  the day it was originally set to expire, until such time as the court ruled on Versaterm's

3  motion for a preliminary injunction.  (8/18/16 Ord. (Dkt. # 25).)   The court also ordered

4  Versaterm to file supplemental briefing on the issue of whether Mr. Hicks is a necessary

5  party pursuant to Federal Rule of Civil Procedure 19 and therefore must be joined if

6  feasible.  (*See id.*)

7       In its motion for a preliminary injunction, Versaterm requests that the court enjoin

8  Defendants from producing its allegedly confidential and trade secret information to Mr.

9  Hicks.  Specifically, Verstaterm contends that its software manuals may not be disclosed

10  for three reasons:  (1) the manuals fall within a category of records exempt from

11  disclosure under RCW 42.56.270(11) as "proprietary data, trade secrets, or other

12  information that relates to . . . [a] vendor's unique methods of conduct business

13  [or] . . . data that is unique to the product or services of the vendor" (Mot. at 13-14); (2)

14  the manuals are trade secrets exempt from disclosure under the PRA (*id.* at 16-18); and

15  (3) Versaterm owns the manuals such that they are not public records that can be

16  disclosed under the PRA (*id.* at 18-19).[2]  Versaterm argues that it is likely to succeed on

17  the merits of these three claims, that it will suffer irreparable harm if the court does not

18

19  _____

20       [2] Versaterm also states that "[t]he same analysis [by which Versaterm contends that its
manuals are trade secrets exempt from disclosure under Washington law] would apply under the

21  new federal 'Defense of Trade Secrets Act.'"  (*Id.* at 17 n.6.)  This argument, however, is not
properly before the court.  Versaterm cites no law in favor of its contention nor puts forth

22  substantive argument that Versaterm's manuals are exempt from disclosure based on the federal
trade secrets law.  (*See generally id.*)  Thus, the court declines to address the argument.

1   issue a preliminary injunction, that the equities favor issuing a preliminary injunction,

2   and that issuing a preliminary injunction will serve the public interest.  (*Id.* at 13-22.)

3   **C.    The City's Response**

4          In its response, the City requests that the court "determine whether [Versaterm] is

5   entitled to a preliminary injunction requiring the City to withhold manuals and training

6   documents that are the subject of a public disclosure request."  (Praceipe (Dkt. # 23); *see*

7   Resp. (Dkt. # 16).)  The City does not directly oppose a preliminary injunction preventing

8   it from disclosing Versaterm's information to Mr. Hicks, but contends that the City has a

9   broad duty to disclose public records under the PRA (Praceipe at 2-3), has no affirmative

10  obligation to invoke an exemption to the PRA on Versaterm's behalf (*id.* at 3-4), is not in

11  a position to judge effectively whether Versaterm's information constitutes trade secrets

12  (*id.* at 6-7), construes the trade secrets exemption to the PRA narrowly (*id.* at 5), and does

13  not have a contractual obligation to withhold Versaterm's information pursuant to a PRA

14  request (*id.* at 8).

15  **III.    ANALYSIS**

16  **A.    Washington's PRA**

17         Washington's PRA is a "'strongly worded mandate for broad disclosure of public

18  records.'"  *Doe ex rel. Roe v. Wash. State Patrol*, 374 P.3d 63, 66 (Wash. 2016) (quoting

19  *Hearst Corp. v. Hoppe*, 580 P.2d 246, 249 (Wash. 1978)).  The PRA "requires state and

20  local agencies to produce all public records upon request unless a specific PRA

21  exemption or other statutory exemption applies."  *Robbins, Geller, Rudman & Dowd,*

22  *LLP v. State*, 328 P.3d 905, 909 (Wash. Ct. App. 2014).  The PRA must be "'liberally

1    construed and its exemptions narrowly construed . . . to assure that the public interest will

2    be fully protected.'"  *Doe*, 374 P.3d at 66 (quoting RCW 42.56.030).  An "interested third

3    party" may seek to prevent disclosure of records, *id.*, but has the burden to prove that the

4    requested documents fall within one of the PRA's exemptions, *Robbins*, 328 P.3d at 910.

5    **B.    Necessary Party Under Rule 19**

6          In extending the TRO to prevent Defendants from disclosing Versaterm's

7    information to Mr. Hicks, the court ordered Versaterm to brief whether Mr. Hicks is a

8    necessary party to this case.  *See Salton Sea Venture, Inc. v. Ramsey*, No. 11cv1968-IEG

9    (WMC), 2011 WL 4945072, at *3 (S.D. Cal. Oct. 18, 2011) (citing *CP Nat. Corp. v.*

10   *Bonneville Power Admin.*, 928 F.2d 905, 911 (9th Cir. 1991) ("The absence of

11   'necessary' parties may be raised by reviewing courts *sua sponte*.")).

12         Federal Rule of Civil Procedure 19 requires parties that are necessary to the action

13   to be joined.  *See* Fed. R. Civ. P. 19.  "Rule 19 is designed to protect the interests of

14   absent parties, as well as those ordered before the court, from multiple litigation,

15   inconsistent judicial determinations or the impairment of interests or rights."  *CP Nat.*

16   *Corp.*, 928 F.2d at 911.  A party may be necessary to a case in three ways:  (1) if the

17   court cannot accord relief among the existing parties without the non-party; (2) if the

18   person has an interest in the action and resolving the case without the non-party will

19   impair or impede the non-party's ability to protect its interest; and (3) if the person has an

20   interest in the action and resolving the case without the non-party may leave an existing

21   party open to inconsistent obligations.  *A.H.R. v. Wash. State Health Care Auth.*, No.

22   C15-5701JLR, 2016 WL 98513, at *7 (W.D. Wash. Jan. 7, 2016); Fed. R. Civ. P.

1  19(a)(1)(A)-(B)(i).  If the party is necessary, it must be joined if feasible.  *See id.*

2  However, if the party required to be joined if feasible "cannot be joined, the court must

3  determine whether, in equity and good conscience, the action should proceed among the

4  existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).

5          The inquiry into whether a party is necessary "is a practical one and fact specific,

6  and is designed to avoid the harsh results of rigid application."  *A.H.R.*, 2016 WL 98513,

7  at *6 (internal quotations and citation omitted).  A party has an interest in the action when

8  he has a legally cognizable interest or a legally protected interest.  *See id.*  Even if the

9  party has an interest in the litigation, however, "that party may not be necessary under

10  Rule 19(a) if the absent party is 'adequately represented' by a present party."  *Id.* (citing

11  *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012)).

12  A non-party is adequately represented where the present party "'will undoubtedly make

13  all of the absent party's arguments,'" "'the party is capable of and willing to make such

14  arguments,'" and "'the absent party would [not] offer any necessary element to the

15  proceedings that the present parties would neglect.'"  *Salt River*, 672 F.3d at 1179

16  (quoting *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992)).

17  //

18  //

19  //

20  //

21  //

22

ORDER- 8

1    The court concludes that Mr. Hicks is not a necessary party.[3]  While he has an

2  interest in this case—the disclosure of the records that he has requested from the SPD—

3  his interest in disclosure is adequately represented by the City.[4]  The City does not favor

4  a preliminary injunction; rather, it argues that the court should determine whether a

5  preliminary injunction is appropriate so that the City knows what it is required to do in

6  response to Mr. Hicks's request.  (Praecipe at 1.)  Indeed, the City states unequivocally

7  that it will disclose to Mr. Hicks the information that he seeks, absent a preliminary

8  injunction.  (*Id.* at 8.)  In addition, the City challenges several of Versaterm's

9  characterizations of the PRA.  For example, the City argues that the PRA is a strong

10  mandate for broad disclosure of public records (*id.* at 2); the City has no "affirmative

11  obligation . . . to not disclose public records that may contain exempt materials, including

12  trade secrets" (*id.* at 4); the PRA imposes stringent requirements on a party seeking an

13  injunction to prevent disclosure (*id.* at 5); the trade secrets exemption is "limited in

14  scope" (*id.*); and the City has no contractual obligation to withhold Versaterm's

15

16  _____

17    [3] The court also notes that it ordered the parties to provide Mr. Hicks with a copy of the
original TRO and the extension of the TRO.  (*See* 8/4/16 Ord.; 8/18.16 Ord.)  Versaterm
18  affirmed that it provided Mr. Hicks with a copy of the TRO and the extension of the TRO, and
Mr. Hicks acknowledged that he received the orders.  (*See* Cert. of Service (Dkt. # 27), Ex. A.)
19  Although he is not required to do so, Mr. Hicks has made no attempt to intervene or otherwise
appear in this case.  (*See generally* Dkt.)

20
    [4] As the Washington Court of Appeals has noted, under Washington's Court Rule 19, a
21  PRA requester is not always a necessary party, particularly where a proceeding is "truly
adversarial."  *Cedar Grove Composing, Inc. v. City of Marysville*, 354 P.3d 249, 256 (Wash. Ct.
22  App. 2015) (citing *Burt v. Dep't of Corr.*, 231 P.3d 191 (Wash. 2010)); *see also* Wash. Ct. Rule
19.

1  documents from Mr. Hicks (*id.* at 8).[5]  All of these arguments advance Mr. Hicks's

2  interest in disclosure.

3      Although the City does not argue that Versaterm's information does not contain

4  trade secrets, the City nonetheless argues that "[t]he PRA's exemption for trade secrets is

5  limited in scope."  (*Id.* at 5.)  The City therefore appears to be making the same

6  arguments that Mr. Hicks would, and the court concludes that Mr. Hicks would not offer

7  any necessary element to this case if he were joined.  *See Salt River*, 672 F.3d at 1179.

8  Therefore, the court concludes that Mr. Hicks is not a necessary party because his

9  interests in disclosure are adequately represented.

10  **C.    Preliminary Injunction**

11      1.  <u>Standard</u>

12      Although a preliminary injunction is never granted as of right, *see Winter v.*

13  *Natural Res. Def. Council*, 555 U.S. 7, 24 (2008), it is a tool to "preserv[e] the status quo

14  and prevent[] the irreparable loss of rights before judgment," *Sierra On-Line, Inc. v.*

15  *Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).  The party seeking a

16  preliminary injunction must make "a clear showing" that the court should issue the

17  preliminary injunction.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

18  *//*

19

20  [5] At oral argument, the City suggested that the City and Mr. Hicks may have different
    interests because the City is advocating for disclosure of the records because the PRA requires
    broad disclosure of public records, not because disclosure of the records is in the public interest.

21  However, the court notes that the PRA itself codifies a general public interest in disclosure of
    public records.  *See Doe*, 374 P.3d at 66 (The PRA is a "'strongly worded mandate for broad

22  disclosure of public records.'" (quoting *Hearst Corp. v. Hoppe*, 580 P.2d 246, 249 (Wash.
    1978))).

ORDER- 10

1    Here, as a threshold matter, the parties dispute the appropriate standard for a

2    preliminary injunction where the PRA is involved.  Versaterm contends that the Federal

3    Rule of Civil Procedure 65 governs whether the court may issue a preliminary injunction

4    in this case (*see* Mot. at 11-12 (applying  Rule 65 to its analysis of whether a preliminary

5    injunction should issue)), while the City argues that there are "additional substantive

6    requirements for [preliminary injunctive relief] under the PRA" (Resp. at 5 (citing RCW

7    42.56.540)).

8        In a diversity case, a party cannot obtain an injunction in federal court if "state law

9    clearly rejects the availability of that remedy."  *Sims Snowboards, Inc. v. Kelly*, 863 F.2d

10   643, 647 (9th Cir. 1988); *see also Travelers Cas. & Sur. Co. of Am. v. W.P. Rowland*

11   *Constructors Corp.*, No. CV 12-00390-PHX-FJM, 2012 WL 1718630, at *2 (D. Ariz.

12   May 15, 2012) (noting that Federal Rule of Civil Procedure 65 is procedural and applying

13   that rule to the court's determination of preliminary injunction where both federal law

14   and Arizona law permitted a court to issue the type of preliminary injunctive relief that

15   the plaintiff requested); *Anselmo v. Mull*, No. CIV. 2:12-1422 WBS EFB, 2012 WL

16   5304799, at *6 (E.D. Cal. Oct. 25, 2012) ("In applying the federal injunction standard,

17   courts recognize that state law would control on the issue of whether a plaintiff is entitled

18   to seek injunctive relief on the claim.  After concluding that a plaintiff is entitled to seek a

19   preliminary injunction, however, courts often rely on the federal standard in exercising

20   their discretion to determine whether to grant an injunction." (internal citations omitted)).

21   Accordingly, "when applying the federal standard for preliminary injunctions, a court

22   must first determine whether a plaintiff would be entitled to injunctive relief under state

1   law." *Int'l Medcom, Inc. v. S.E. Int'l, Inc.*, 2015 WL 7753267, at *2 (citing *Sims*, 863

2   F.2d at 646-47).  "Once a court determines that a plaintiff would be entitled to a

3   preliminary injunction under state law, the court may rely on the federal standard to

4   exercise its discretion regarding whether to grant the preliminary injunction." *Id.*

5       Under Washington law, "[i]n the context of RCW 42.56.540, a party seeking a

6   TRO or preliminary injunction to prevent the disclosure of certain records must show a

7   likelihood that an exemption applies and that the disclosure would clearly not be in the

8   public interest and would substantially and irreparably damage any person or vital

9   government functions." *SEIU Healthcare 775NW v. State Dep't of Soc. & Health Servs.*,

10  --- P.3d ---, 2016 WL 1447304, at *5 (Wash. Ct. App. Apr. 12, 2016).  Therefore,

11  Washington law provides for preliminary injunctions to prevent disclosure under the

12  PRA, and the court will apply Federal Rule of Civil Procedure 65 to guide its exercise of

13  discretion.

14      Under the Federal Rules of Civil Procedure, a party seeking a preliminary

15  injunction must show:  (1) a likelihood of success on the merits; (2) that irreparable harm

16  is likely, not just possible, if the injunction is not granted; (3) that the balance of equities

17  tips in its favor; and (4) that an injunction is in the public interest.  *See* Fed. R. Civ. P. 65;

18  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011); *Doe v.*

19  *Reed*, 586 F.3d 671, 676 (9th Cir. 2009) (applying Federal Rule of Civil Procedure 65

20  standard to review of a preliminary injunction issued to prevent disclosure pursuant to the

21  PRA), *judgment affirmed by John Doe No. 1 v. Reed*, 561 U.S. 186 (2010).  When there

22  are "serious questions going to the merits and a balance of hardships that tips sharply

towards the plaintiff," the court may issue a preliminary injunction "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Cottrell*, 632 F.3d at 1136.

The court grants Versaterm's motion because Versaterm has established at least that there are "serious questions" going to the merits of its claims, a likelihood of irreparable harm, that the balance of hardships tilts strongly in its favor, and that a preliminary injunction is in the public interest.

    2.  Likelihood of Success on the Merits or "Serious Questions" Going to the Merits

The court first considers whether Versaterm is likely to succeed on the merits, or at the very least has raised "serious questions going to the merits," of its claims that its information is exempt from disclosure. *See id.* Where a party asserts multiple claims, the court need not find that the plaintiff is likely to succeed on the merits of all of the plaintiff's claims to issue a preliminary injunction. *See, e.g., Fin. Express LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160, 1168 (C.D. Cal. 2008) ("In order to be granted a preliminary injunction, [plaintiff] only needs to show the requisite combination of probable success on the merits and the possibility of irreparable injury with respect to any one of its claims."); *Jaye v. Jaye*, No. 2:14-cv-22-JAD-PAL, 2014 WL 201615, at *2 (D. Nev. Jan. 16, 2014) ("The Court need not evaluate all claims included in the Complaint if it concludes that successful prosecution on at least one of the claims is likely."). The court concludes that Versaterm has at least raised serious questions about the merits of its claim that its information contains trade secrets and is exempt from disclosure.

1    Therefore, the court does not evaluate at this time Versaterm's claims that its information

2    is exempt from disclosure under RCW 42.56.270(11) or because Versaterm—not

3    Defendants—own the information in question.[6]

4         Washington's Uniform Trade Secrets Act ("UTSA") is an "other statute" that

5    exempts trade secrets from disclosure under the PRA.  *Progressive Animal Welfare Soc'y*

6    *v. Univ. of Wash.*, 884 P.2d 592, 603 (Wash. 1994).  The Washington State Legislature

7    enacted the UTSA "to protect commercial information concerning business methods."

8    *McCallum v. Allstate Prop. & Cas. Ins. Co.*, 204 P.3d 944, 950 (Wash. Ct. App. 2009);

9    *see also Progressive Animal Welfare Soc'y*, 884 P.2d at 603 (noting that the Washington

10   legislature recognizes that the "unnecessary disclosure" of trade secrets should be

11   prevented).  A trade secret is information, "including a formula, pattern, compilation,

12   program, device, method, technique, or process" that "[d]erives independent economic

13   value, actual or potential, from not being generally known to, and not being readily

14   ascertainable by proper means by, other persons who can obtain economic value from its

15   disclosure or use; and . . . [i]s the subject of efforts that are reasonable under the

16   circumstances to maintain its secrecy."  RCW 19.108.010(4).  The information must be

17   _____

18        [6] The City argues that RCW 42.56.270(11) applies only to "state purchased health care"
     based on a "holistic reading" of the statute (Resp. at 6) and that, even though Versaterm owns its
19   manuals, the manuals are nonetheless public records subject to disclosure absent a statutory
     exemption (*id.* at 8).  The court need not address the merits of these arguments at this time.  In
20   addition, the court notes that the City contests Versaterm's assertions that the City has a
     contractual obligation to refrain from disclosing the manuals and an affirmative duty to invoke
21   any applicable exemption under the PRA.  (*Id.* at 3-4, 8.)  The court also declines to address
     these issues because the court finds that Versaterm has at least demonstrated that there are
22   serious questions going to the merits of its claim that the manuals are exempt from disclosure
     under the PRA as trade secrets.

"novel" to qualify as a trade secret.  *Spokane Research & Def. Fund v. City of Spokane*,

983 P.2d 676, 682 (Wash. Ct. App. 1999).  "A key factor in determining whether

information has 'independent economic value' under the statute is the effort and expense

that was expended in developing the information."  *McCallum*, 204 P.3d at 950.

"[C]onclusory statements and unsubstantiated assertions" that do not "provide concrete

examples" are insufficient to demonstrate that something is a trade secret.  *Id.* at 951.

There is no right to obtain trade secrets via the PRA.  *See Confed. Tribes of Chehalis Res.*

*v. Johnson*, 958 P.2d 260, 266 (Wash. 1998) (The PRA "may not be used to acquire

knowledge of a trade secret.").

      Versaterm has shown that there are at least "serious questions" that its software

manuals contain trade secrets, such that the information is exempt from disclosure under

the PRA.[7]  The manuals contain information that likely derives independent economic

value from not being known to its competitors.  *See* RCW 19.108.010(4)(a).  For

example, Versaterm has developed its "advanced information and management systems

for public safety agencies" over almost 40 years (Rosales Aff. ¶ 3; *see also* Supp. Rosales

Decl. ¶ 7), demonstrating that Versaterm has expended considerable effort in developing

its software.  *See McCallum*, 204 P.3d at 950 ("A key factor in determining whether

information has 'independent economic value' . . . is the effort and expense that was

expended in developing the information.").  In addition, the manuals contain "detailed

---

     [7] Versaterm provided the court a copy of one of Versaterm's manuals (Query/Browse User Guide Version 7.5 Edition 1.0 (©2015)), which the court reviewed *in camera* at the September 6, 2016 hearing.  (*See* Min. Entry.)

ORDER- 15

1    descriptions of the features and functions of Versaterm's software, step-by-step

2    instructions on how to use Versaterm's software, and include screen shots." (Rosales

3    Aff. ¶ 8.)  Versaterm contends that other software companies could "replicate"

4    Versaterm's software if they have access to this information, which suggests that the

5    information is novel and not in widespread use. *See Spokane Research & Def. Fund*, 983

6    P.2d at 682 (holding that information must be "novel" to constitute a trade secret).  In

7    addition, Versaterm contends that its programs differ from its competitors' products in

8    "design architecture," data organization, and the way "certain information on forms [is]

9    pre-populated or automatically filled out." (Supp. Rosales Decl. ¶¶ 10-12.)

10           Further, Versaterm uses "reasonable" methods to maintain the secrecy of its

11    information. *See* RCW 19.108.010(4)(b).  It does not share the software manuals with

12    anyone but customers that have signed confidentiality agreements, and it does not

13    publicly disclose the information.   (Rosales Aff. ¶¶ 9, 11-13.)  Versaterm also enters into

14    confidentiality agreements with its software developers to prevent them from disclosing

15    information about Versaterm's products.  (Supp. Rosales Decl. ¶ 3.)

16           On these facts, Versaterm has demonstrated at the very least that there are "serious

17    questions" on the merits of Versaterm's claim that its information contains trade secrets

18    that are exempt from disclosure under the PRA.  *See Cottrell*, 632 F.3d at 1136 ("We

19    hold that, at a minimum, there are 'serious questions' on the merits whether these three

20    factors are sufficient to justify the ESD.")

21    //

22

1        3.  Irreparable Harm

2        "[P]laintiffs may not obtain a preliminary injunction unless they can show that

3   irreparable harm is likely to result in the absence of the injunction."  *Cottrell*, 632 F.3d at

4   1135.  "[T]he mere possibility of irreparable harm is insufficient for the court to issue the

5   extraordinary remedy of a preliminary injunction."  *Idaho Rivers United v. United States*

6   *Army Corps of Engineers*, 156 F. Supp. 3d 1252, 1262 (W.D. Wash. 2015).  Irreparable

7   harm may occur where "[p]ublic disclosure of a trade secret" is threatened because such

8   disclosure "destroys the information's status as a trade secret."  *Saini v. Int'l Game Tech.*,

9   434 F. Supp. 2d 913, 919 (D. Nev. 2006).  Disclosure also allows "competitors to

10  reproduce [the] work without an equivalent investment of time and money."  *Id.* (citing

11  *Winston Research Corp. v. Minn. Min. & Mfg. Co.*, 350 F.2d 134, 142 (9th Cir. 1965));

12  *see also Robbins Co. v. JCM Northlink LLC*, C16-0646RSL, 2016 WL 4193864, at *3

13  (W.D. Wash. Aug. 9, 2016) ("The disclosure of . . . information that . . . constitutes trade

14  secrets alone is sufficient to show a likelihood of irreparable harm.").  Further, evidence

15  that trade secrets are likely to be disclosed may support a finding of irreparable harm.

16  *See Amazon.com, Inc. v. Powers*, C12-1911RAJ, 2012 WL 6726538, at *7 (W.D. Wash.

17  Dec. 27, 2012).

18        Absent a preliminary injunction, disclosure of Versaterm's information is more

19  than likely—it is imminent.  (*See* Resp. at 8.)  Defendants state that they "stand[] ready to

20  release un-redacted records without delay if . . . Versaterm has not met its burden to

21  establish that the UTSA—or another exemption—shields the records in question."  (*Id.*)

22  If the City does so, the information Versaterm has allegedly gone to great lengths to keep

1  secret cannot be made secret again.  (*See* Rosales Aff. ¶ 11 (stating that Versaterm "does

2  not publicly disclose its software manuals, nor does it share them with competitors or

3  even potential customers").)  In addition, Versaterm argues that, once the information is

4  disclosed, Versaterm will suffer "substantial financial losses," "competitive

5  disadvantages," "loss of customers," and loss of "sales to competitors."  (Mot. at 20.)

6  Defendants' unequivocal position that they will disclose the information, coupled with

7  the harms Versaterm argues will occur if its information is disclosed, demonstrates that

8  irreparable harm is likely if the court does not issue a preliminary injunction.

9        4.  <u>Balance of Equities</u>

10        The balance of equities strongly favors Versaterm.  As discussed above,

11  Versaterm has an interest in keeping its trade secrets confidential.  If Versaterm's

12  information is disclosed, Versaterm's alleged trade secrets will cease to be confidential,

13  and Versaterm may lose the competitive advantage that arises from the information's

14  secrecy.  (*See* Rosales Aff. ¶ 10.)

15        On the other hand, Defendants and Mr. Hicks have an interest in disclosure.  In

16  particular, Defendants have a duty to disclose public records under the PRA, unless the

17  records are exempt from disclosure.  (*See* Resp. at 3 ("An agency must disclose public

18  records upon request unless a statute specifically exempts or precludes disclosure. . . .")

19  (citing RCW 42.56.070(1)).)  However, if the court ultimately determines that

20  Versaterm's information cannot be released to the public pursuant to the PRA,

21  Defendants have no duty to disclose.  *See* RCW 42.56.070(1).  Further, Defendants

22  cannot be held liable for not releasing the records when a court has issued a preliminary

1   injunction preventing disclosure, even if the court later rules that Versaterm is not entitled

2   to a permanent injunction.  *See DeLong v. Parmelee*, 267 P.3d 410, 412 (Wash. Ct. App.

3   2011) ("An agency is not liable for PRA penalties while an injunction under [the PRA] is

4   in effect . . . .").  Further, if Versaterm's information is ultimately exempt from

5   disclosure, Mr. Hicks has no right to obtain it from Defendants and therefore suffers no

6   harm.  *See Johnson*, 958 P.2d at 266 (The PRA "may not be used to acquire knowledge

7   of a trade secret.").  In any event, there will be an opportunity for a decision on the merits

8   as to whether Versaterm is entitled to a permanent injunction (*see generally* Compl.

9   (seeking permanent injunction)), and if it is not, Defendants and Mr. Hicks have will

10  have suffered only a relatively minor delay in the disclosure of the information.

11  Therefore, the equities of the situation favor Versaterm because it will likely suffer

12  irreparable harm if its information is disclosed, while Defendants and Mr. Hicks will

13  suffer relatively little harm.

14      5.  Public Interest

15      Finally, a preliminary injunction is in the public interest.  Although Washington

16  has recognized a public interest in broad disclosure of public records, *see Doe*, 374 P.3d

17  at 66, it has also recognized a public interest in "protect[ing] commercial information

18  concerning business methods," *McCallum*, 204 P.3d at 950; *see also Progressive Animal*

19  *Welfare Soc'y*, 884 P.2d at 603 (noting that Washington's legislature recognizes that the

20  "unnecessary disclosure" of trade secrets should be prevented).  Because Versaterm has

21  demonstrated that there are at least "serious questions" going to the merits of its claim

22  that its information constitutes trade secrets that cannot be disclosed under the PRA, the

1   public interest in protecting trade secrets has been triggered.  Thus, this factor also

2   supports issuing a preliminary injunction to prevent disclosure of Versaterm's

3   information until the case can be decided on its merits.

4               **IV.    CONCLUSION**

5           Based on the foregoing analysis, the court GRANTS Versaterm's motion and

6   PRELIMINARILY ENJOINS Defendants from producing, disclosing, or releasing

7   Versaterm's documents in response to Mr. Hicks's PRA request during the pendency of

8   this action and pending further order of the court.  Specifically, Defendants are enjoined

9   from producing, disclosing, or releasing the following Versaterm documents:

10  - Versadex Imaging User Guide US RMS 7.5 Edition 1.0 (©2014);

11  - Overview User Guide US RMS 7.5 Edition 1.8 (©2015);

12  - Query/Browse User Guide Version 7.5 Edition 1.0 (©2015);

13  - Text Search User Guide Version 7.5 Edition 1.0 (©2015);

14  - Versadex Mail User Guide Version 7.5 Edition 1.0 (©2014).

15  (*See* Rosales Aff. ¶ 21.)  This injunction shall be immediately effective and extend until

16  trial on this matter concludes.  The court further ORDERS that the $1,000.00 bond

17  Versaterm posted on August 5, 2016, pursuant to the court's August 4, 2016, order

18  remain with the court as security to offset any potential harm from the delay in disclosure

19  as this case is pending.  *See* Fed. R. Civ. P. 65(c); (8/4/16 Ord. at 6).

20  //

21  //

22

1   Either party may move the court to alter the scope of or to dissolve the preliminary

2   injunction if circumstances change.

3          Dated this 13th day of September, 2016.

4

5

6          _____

7          JAMES L. ROBART
           United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 21